Wendell DOCKUM, Appellee,

v.

D. H. LLOYD, an individual; and W & L Steel Corporation, a corporation, Appellants.

No. 54985.

Court of Appeals of Oklahoma, Division No. 2.

April 6, 1982.

Rehearing Denied May 5, 1982.

Certiorari Denied June 22, 1982.

Released for Publication by Order of the Court of Appeals June 25, 1982.

W. Rogers Abbott, II, Martha M. McMurry, Abbott & McMurry, Oklahoma City, for appellee.

Edward Goldman, Goldman & Goldman, Oklahoma City, for appellants.

BRIGHTMIRE, Judge.

Were the trial court's findings of fact clearly against the weight of the evidence requiring reversal of the judgment in favor of plaintiff? We hold they were not and affirm.

I

Early in 1974 Dan Lloyd asked Wendell Dockum, a well-known Oklahoma City businessman, to join him in an oil field pipe supply venture. Dockum agreed to do so, and after a couple of profitable deals, the two men incorporated the business under the name of W & L Steel Corporation, which the parties elected to qualify as a Subchapter S corporation under the federal tax laws, and divided the stock. The ar-

rangement was that Dockum would provide the financing and Lloyd would spend full time developing and handling the business. The men agreed the company would not stock pipe, but acquire it as needed to fill orders.

Things went along, and because Dockum had difficulty getting a handle on what or how the enterprise was doing, he asked Lloyd in August or September 1974 to get a bookkeeper and start keeping corporate books. A certified public accountant by the name of Lynn Nichols was then hired. Nichols' firm attempted to develop a financial report but found this difficult to do because Lloyd had been running the business "out of his pocket" and he was hard to get in touch with. Finally, a tentative report was issued in December 1974 indicating retained earnings of $399,954 and disclosing that Lloyd had misappropriated some company funds. The report did not show the entire picture, however, because of misinformation received from Lloyd.

Because Subchapter S stockholders are required to take their profits annually, the parties discussed whether Dockum should take his share before January 1, 1975. It was decided, however, that since the corporation's fiscal year did not end until March, Dockum would wait and take his share at that time and report it on his 1975 income tax return. Lloyd did not receive a cash distribution, but only a credit on the books because he had already diverted a large sum of company funds to his own use.

Then it happened. The pipe market "went to the dickens" in February 1975. Laboring under the impression that the corporation had retained earnings of over $399,000, Dockum, on the advice of the accountants, withdrew $160,000 in March.

The following April 30 the accountants rendered another financial statement showing profits of only $223,650.

The court found, and we believe correctly so, that Lloyd also failed to disclose he was purchasing pipe and building an inventory in violation of company policy. Lloyd also concealed from Dockum the large amount of money he had withdrawn from the company for gambling debts and otherwise for his own use and benefit. Some of this money he used to purchase a large new home, pay living expenses, and finance his personal investments in other enterprises. On one occasion, Lloyd transferred $2,000,000 from the company to an account under his sole contract. Lloyd made unauthorized loans of company funds to himself. And to deceive Dockum, Lloyd made every effort to conceal the true state of company affairs and to create the false appearance that the company was being run as the parties had agreed it would be.

When some of Lloyd's fraud came to light in April 1975 Dockum demanded an explanation. A satisfactory answer was not forthcoming. Dockum decided things were "out of control" and on April 26 submitted his resignation as a director and officer and agreed to sell his stock to Lloyd.

Following this, W & L Steel failed to deliver some prepaid pipe to a customer, Asiatic Petroleum Corporation, and did not refund the money. Asiatic brought a suit in federal court against W & L Steel, Lloyd and Dockum. After extended litigation, Dockum settled with Asiatic for $125,000. Dockum paid this plus $25,000 in attorney's fees. The settlement was agreed to after Dockum was advised by counsel that W & L Steel was liable to Asiatic for substantially more than $125,000 and that the distribution of profits Dockum had unwittingly received in March 1975 was made in violation of an Oklahoma statute that prohibits such distribution unless there remain net assets equal to one-fourth of the corporation's liabilities.[1] Asiatic eventually obtained a judgment against W & L Steel for over $650,000. Dockum filed this suit against Lloyd and W & L Steel seeking to recover $150,000 indemnification from the latter defendant for the sums he expended in defending and settling the Asiatic suit, and $227,000 from the former one as damages he sustained as a result of the fraud and deceit Lloyd practiced.

1. 18 O.S.1971 § 1.133(3).

Answers were filed. At pretrial conference the parties agreed to waive a jury. The case was tried to the court March 1, 1979, who found the issues in favor of plaintiff and against both defendants and awarded him a judgment of $150,000 over and above all credits and set offs.

From this judgment defendants appeal advancing two propositions: (1) the findings upon which the judgment is based are clearly against the weight of the evidence; and (2) the damages assessed are erroneous.

## II

In their brief,[2] defendants attempt to demonstrate that the trial court's factual findings are clearly against the weight of the evidence by making several generalizations regarding the law and facts which are either irrelevant or erroneous. The main thrust of their argument is that "there was absolutely no fraud perpetuated [*sic*] by [Lloyd] upon the Appellee [Dockum] ..." because "Appellee had ample access to the company's books and records and had tremendous business and financial experience to examine or to have the books examined if he felt the need."

■ The short answer to this is that there is in the record an abundance of clear, cogent and convincing evidence that Lloyd breached the fiduciary duty he owed to the corporation and Dockum and pursued a course of conduct aimed at cheating both. And the fact that Dockum was an experienced and capable businessman who had a right to see whatever books Lloyd saw fit to create affords Lloyd no excuse for defrauding him. We think Lloyd's own testimony corroborates the evidence of fraud. Said he, "I couldn't afford a cup of coffee"

in April 1974, but he admitted signing on April 30, 1975, a personal financial statement saying he had a "net worth" of "[h]alf a million dollars."

## III

■ Defendants' second contention—that the amount of damages awarded was wrong—is also without merit. Summarized, the argument is that the award "is arbitrary and an abuse of the Trial Court's discretion," because it was Dockum's responsibility to "maintain the company in a good financial position" and he did not do this, but instead made a voluntary, unilateral settlement with Asiatic.

The award is not arbitrary but well within the realm of the proved damages. Lloyd's contention about Dockum's responsibility to keep the company in good financial condition is not only a non sequitur, but also begs the question. The fact that the amount awarded equaled the sum Dockum paid Asiatic resulted not in an arbitrary award, but in an award for one element of plaintiff's damage. It seems to us that defendant Lloyd is fortunate that: (1) plaintiff did not seek punitive damages; and (2) the court did not award further damages resulting from Lloyd's fraud.

The judgment appealed is affirmed.

BOYDSTON, P. J., and BACON, J., concur.

---

**2.** Defendants' brief is disappointing; it violates the court rules in several respects. The cover page is incomplete, there is no index, and the body contains not a single record reference. Constant reference to "appellant" and "appellee" slows the reader, particularly when there is no identification of the parties. On a scale of one to ten we would give it a one.

We might also mention in this regard that plaintiff's brief substantially complies with the rules, and on the same scale we give it a nine.